## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 44285

| | | |
|---|---|---|
| In the Matter of the DOE CHILDREN, | ) | |
| Children Under the Age of Eighteen Years. | ) | |
| ---------------------------------------------------- | ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) | Boise, October 2016 Term |
| | ) | |
| | ) | 2016 Opinion No. 114 |
| Petitioner-Respondent, | ) | |
| v. | ) | Filed: November 1, 2016 |
| | ) | |
| JOHN DOE (2016-27), | ) | Stephen Kenyon, Clerk |
| | ) | |
| Respondent-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Boundary County. Hon. Justin W. Julian, Magistrate Judge.

The judgment of the magistrate court is affirmed.

J. Lynn Brooks, Attorney at Law, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

_____

ON THE BRIEFS

HORTON, Justice.

John Doe appeals from the magistrate court's judgment terminating his parental rights to his son, J.M. The magistrate court determined that it was in J.M.'s best interests to terminate Doe's parental rights under Idaho Code sections 16-2005(1)(b) and (d) because there was clear and convincing evidence that Doe had neglected J.M pursuant to Idaho Code section 16-2002(3)(b), and/or Doe would be unable to discharge his parental responsibilities for a prolonged indeterminate period of time, which would be injurious to J.M's health, morals, or well-being. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

John Doe and Mother are the natural parents of J.M, an eight-year-old boy. John Doe and Mother have had a sporadic and volatile relationship for approximately ten years. During that

time, both John Doe and Mother used methamphetamine and other controlled substances and committed acts of domestic violence upon each other. Mother has three children; however, this appeal deals only with the termination of John Doe's parental rights to J.M.

On March 13, 2014, the Boundary County Prosecuting Attorney filed a petition under the Child Protective Act and a motion for an order for removal of children from Mother's care. The magistrate court ordered J.M. removed from Mother's care and a shelter care hearing was set for March 14, 2016. Doe stipulated to J.M. being placed in the legal custody of the Idaho Department of Health and Welfare (the Department) based upon an unstable home environment. The magistrate court held a case plan hearing and on April 28, 2014, Doe stipulated to the case plan and alternate care plan. The case plan provided in pertinent part:

1. [John Doe] shall complete the Life Skills class he is currently participating in and shall demonstrate the tools he has learned through the way he communicates to and treats his loved ones.

2. [John Doe] shall fully engage with mental health treatment with a Department approved therapist. [Doe] shall demonstrate the tools he has gained through his ability to control his temper and the manner which he communicates his needs and frustrations. [Doe] shall further be able to identify his triggers that cause him to turn to violence and the tools he gains to change his thinking and behavior processes with those triggers.

3. [John Doe] shall submit to random UA testing or hair follicle testing at the discretion of the Department and the approved testing facility of the Department. "NO SHOWS" or [dilute] tests results will be considered a positive for substances.

4. [John Doe] shall provide [J.M.] with a safe and stable home environment including appropriate sleeping accommodations and an adequately clean house. [Doe] shall ensure that [J.M.'s] educational needs are met and that he is supervised by a safe adult at all times. [Doe] shall not allow adults who are actively using illicit drugs or who are unsafely inebriated to be in his home with [J.M.] present. [Doe] shall ensure [J.M.] is not exposed to illicit drugs in any manner. [Doe] shall allow the Department to have unannounced visits to his home in order to assess the conditions of his homes to insure [J.M.'s] safety.

5. [John Doe] shall sign all necessary releases for the Department to have collateral contract with his treatment providers through this child protection case. [Doe] shall further sign releases for the Department to receive all psychological assessment results, Life Skills assessment results and any other assessment results that are pertinent to [Doe's] mental health and addiction treatment services.

Between October 7, 2014, and June 2, 2015, the magistrate court held a series of review hearings and permanency hearings. At the first review hearing held on October 7, 2014, the magistrate court ordered that two additional tasks be added to Doe's case plan:

1. [John Doe] shall complete a neuropsychological evaluation; and
2. [John Doe] shall complete the parenting class provided through Rawlings Community Counseling.

The Department filed a petition to terminate Doe's parental rights on August 5, 2015.

On March 14, 2016, Doe filed a motion pursuant to Idaho Rule of Civil Procedure 40(d)(2)[1] to disqualify the magistrate judge due to bias. Doe's motion was based on a statement made by the magistrate judge to Doe at a hearing in an unrelated criminal case on January 29, 2016, when Doe made his initial appearance in connection with his alleged failure to complete a Sheriff's Inmate Labor Program:

COURT: Alright [Doe], that's quite enough out of you. Whatever credibility you previously had, it's gone now, so you've got fourteen days to serve.

The magistrate court denied Doe's motion to disqualify, concluding that the full context of the statement narrowed its application to the criminal case and that no bias or prejudice was apparent or carried over into other proceedings.

On March 23–24, 2016, the magistrate court held a trial and on June 13, 2016, the magistrate court filed its memorandum opinion explaining why it was terminating Doe's parental rights. The magistrate court concluded that it was in J.M.'s best interests to terminate Doe's parental rights under Idaho Code sections 16-2005(1)(b) and (d) because there was clear and convincing evidence that Doe had neglected J.M pursuant to Idaho Code section 16-2002(3)(b), and/or Doe would be unable to discharge his parental responsibilities for a prolonged indeterminate period of time. Doe timely appealed.

## II. STANDARD OF REVIEW

"The trial court must find that grounds for terminating parental rights have been proved by clear and convincing evidence." *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010); *see also* I.C. § 16-2009. "Clear and convincing evidence is evidence that indicates the thing to be proved is highly probable or reasonably certain." *In re Doe (2014-17)*, 157 Idaho 694, 699, 339 P.3d 755, 760 (2014). "This Court must 'conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate

---

[1] The rule is now designated as Idaho Rule of Civil Procedure 40(b)(1)(D).

court's judgment, as the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.' " *In re Doe (2014-23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015) (quoting *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010)).

This Court "will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision." *In re Doe (2014-17)*, 157 Idaho at 699, 339 P.3d at 760 (quoting *Idaho Dep't Health & Welfare v. Doe*, 150 Idaho 36, 41, 244 P.3d 180, 185 (2010)). "Substantial, competent evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*

### III. ANALYSIS

Doe argues: (1) the magistrate court erred when it denied Doe's motion to disqualify the magistrate judge pursuant to Idaho Rule of Civil Procedure 40(d)(2)(A); (2) the magistrate court made numerous evidentiary errors; (3) the magistrate court erred by considering matters outside of the record; and, (4) the magistrate court's decision was not supported by substantial and competent evidence. These issues are addressed in turn.

### A. The magistrate court did not abuse its discretion when it denied Doe's motion to disqualify.

Doe's motion was based a statement made by the magistrate judge to Doe at a hearing in an unrelated criminal case on a bench warrant issued due to Doe's failure to complete a Sheriff's Inmate Labor Program:

> COURT: Alright [Doe], that's quite enough out of you. Whatever credibility you previously had, it's gone now, so you've got fourteen days to serve.

The magistrate court denied Doe's motion to disqualify, concluding that the full context of the statement narrowed its application to the criminal case and no bias or prejudice was apparent or carried over into other proceedings. At the hearing on the motion to disqualify, the magistrate court explained:

> COURT: Alright, thank you. Well, the context is important regarding the court's observation in that other, as you said, unrelated case. [Doe] was being arraigned on a Bench Warrant for failing to appear to do his, I believe it was some drug testing, some conditions of his release on – in that criminal case. He, quite candidly, was very obviously under the influence of something. My presumption or assumption, I should say, would be likely methamphetamine. He was acting accordingly when he initially had a statement as to trying to give some explanation for why he didn't complete his drug testing. I was listening to that statement to see if it would be appropriate for him to, basically, go back to jail or

4

to give him another opportunity. Rather than responding in anything resembling a rational basis, he went on this high energy rant about the police dealing drugs and doing drugs and things like that.

   The statement regarding him no longer having credibility and being sent off to jail was limited to those circumstances and to his explanation only as to why he violated the conditions of his release. It had nothing to do with his credibility overall or in this CPA case. It was only because of him acting under the influence of something significant and making those rather wild accusations in court in a loud, belligerent and ….. I'm not quite sure of another word to describe it, but just certainly somebody that was under of [sic] a narcotic would be my impression. And that's why he didn't have credibility on the issue as to why he failed to appear for his drug testing and thereby violated the terms of his release. It was not a general assessment about credibility in all situations and candidly with the – all the evidence the Court will be hearing at the TPR trial, that incident and him being taken back into custody isn't even going to enter the Court's mind. So I do not find that I'm prejudiced or that the appearance of prejudice exists sufficient to disqualify the Court at this juncture. So the motion's denied.

Doe's sole argument is that the magistrate judge's statements were unqualified at the time they were made and the magistrate court's explanation that Doe may have been under the influence of drugs at the time of his statements is a competency issue, not a credibility issue. Doe's argument is without merit.

"Denial of a motion for disqualification of a judge is reviewed under an abuse of discretion standard." *State v. Dunlap*, 155 Idaho 345, 390, 313 P.3d 1, 46 (2013). "A judge may be disqualified for cause where it is shown '[t]hat the judge ... is biased or prejudiced for or against any party or the case in the action.' "*Id.* (quoting I.R.C.P. 40(d)(2)(A)(4)). "However, 'a judge may not be disqualified for prejudice unless it is shown that the prejudice is directed against the party and is of such nature and character as would render it improbable' that the party would receive a fair and impartial trial." *Id.* (quoting *Pizzuto v. State*, 134 Idaho 793, 799, 10 P.3d 742, 748 (2000)).

   First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion ... and can only in the rarest circumstances evidence the degree of favoritism or antagonism required.... Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge....

*Id.* at 391, 313 P.3d at 47 (quoting *Liteky v. United States*, 510 U.S. 540, 555–56 (1994)).

Doe has failed to show that the magistrate judge's statements were of such a nature and character as would render a fair and impartial trial improbable. As we noted in *Dunlap*, it takes more than critical, disapproving, or even hostile remarks to support a bias challenge. The magistrate court's reasoned explanation concerning the context in which the statement was made supports its denial of Doe's motion.

**B. We disregard any alleged error in admitting Exhibit No. 31 because Doe has failed to argue that the alleged error affected his substantial rights.**

Doe contends that the magistrate court abused its discretion when it admitted Exhibit No. 31, which consisted of status reports prepared for the Department by Rawlings Community Counseling. Doe argues those reports contained urinalysis toxicology reports from Redwood Toxicology Laboratory that were hearsay evidence lacking foundation or a proper chain of custody. At trial, the magistrate court admitted the exhibit, explaining:

> With respect to the business records of Redwood Toxicology, I think that's a close issue under these circumstances. Candidly, I am going to overrule the objection and let those in, under the business records exception. I think that in terms of prejudice it's really minimal to non-existent since [Doe] has already testified to numerous occasions of failing his UA's. And presumably some, if not all of those, are what we're seeing there in the documentation, so if anything the documentation is – is likely just a little bit cumulative of evidence the Court has already heard. So with that exhibit 31 is admitted.

"At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." I.R.C.P. 61. Doe's only contention is that the magistrate court abused its discretion when it admitted the evidence, not that the evidence ultimately affected Doe's substantial rights. Doe makes no attempt to refute the magistrate court's reasoning concerning the cumulative nature of the exhibit or its conclusion that any prejudice was "minimal to non-existent" because Doe had already admitted to failing a number of UA tests. Thus, because Doe failed to argue the alleged errors affected his substantial rights, we disregard any alleged error in admitting Exhibit No. 31. *In re Doe (2015-21)*, 160 Idaho 154, 165, 369 P.3d 932, 943 (2016) ("The failure to advance argument and authority on the effect of a claimed evidentiary error on a substantial right results in a waiver of the claim on appeal.").

**C. We disregard any alleged error in admitting Exhibit No. 36 because Doe has failed to argue that the alleged error affected his substantial rights.**

Doe argues the magistrate court erred in admitting Exhibit No. 36, an unsigned neuropsychological evaluation report from Big Lake Psychological Services, which diagnosed Doe as having a narcissistic personality disorder, because the report was inadmissible hearsay. Once again Doe has not presented any argument to show that the alleged error affected his substantial rights. Doe simply contends: "Even though the diagnosis made in the Neuropsychological Evaluation Report was not admitted into evidence, the Magistrate relied on the diagnosis in the Memorandum Opinion Terminating Parent Rights."

While it is not entirely clear which exact statements in the magistrate court's memorandum opinion Doe is referring to, even giving Doe the benefit of the doubt, we find that Doe's claim of error is without merit. On page 7 of its memorandum opinion, the magistrate court stated: "It was not until November of 2015, when [Doe] decided to engage in the case plan to some extent, that he was willing to participate in the evaluation (Exhibit 36)." The magistrate court's statement only referenced the exhibit in the context of Doe's compliance with the case plan, not the alleged diagnosis itself. Later, the magistrate court wrote: "Jeanne Racer testified that [Doe] has also been diagnosed with narcissistic personality disorder . . . ." While this statement does reference a diagnosis, it refers to the testimony of Jeanne Racer, not Exhibit No. 36. On page 10 of its memorandum opinion, the magistrate court stated: "Since he was a child himself, [Doe] has been addicted to methamphetamines and steadily involved in serious criminal activity. He has a narcissistic personality disorder and he refuses to seek long term treatment." The magistrate court made no reference to either Jeanne Racer's testimony or Exhibit No. 36. Finally, on page 12 of its memorandum opinion, the magistrate court stated:

> Leaving [Doe] in [J.M.'s] life would clearly not be in the child's best interest. As discussed in detail previously, [Doe] is fundamentally unable to parent. He has been plagued with a powerful methamphetamine addition since the age of 14. He had a significant head injury and suffers from a narcissistic personality disorder. He has an extensive criminal record, both in the distant past and in the present, and a consistent history of domestic violence, disturbances, trespasses and unlicensed driving. He is a three time convicted felon, currently facing two new pending felony charges. To deny termination would be to condemn [J.M.] to a life of exposure to an unstable, drug addicted, violent, emotionally explosive father who will in all likelihood continue to be in and out of rehab, jail and/or prison for the indefinite future.

Again, the magistrate court did not reference Jeanne Racer's testimony or Exhibit No. 36.

Doe has not advanced argument as to why or how these statements affected his substantial rights. Because Doe has failed to argue that the magistrate court's reliance on the

diagnosis affected his substantial rights, we disregard any alleged error in admitting Exhibit No. 36. *In re Doe (2015-21)*, 160 Idaho at 165, 369 P.3d at 943.

**D. We disregard any alleged error in admitting Jeanne Racer's testimony because Doe has failed to argue the alleged error affected his substantial rights and the magistrate court's termination of Doe's parental rights may be sustained on alternative grounds.**

### 1. Hearsay Statements

Doe argues that the magistrate court abused its discretion by allowing Jeanne Racer to testify as to certain matters during the trial. Doe cites to a number of portions of the trial transcript where Doe objected to alleged hearsay statements, which the magistrate court overruled. Doe concludes: "Each of the statements were inadmissible hearsay, and the Magistrate Court abused its discretion by admitting the statements and considering them in making its decision to terminate Doe's parental rights."

Once again Doe has failed to argue how or why these alleged evidentiary errors affected his substantial rights. Doe does not point to any portion of the magistrate court's memorandum opinion or findings of facts and conclusions of law to show where the magistrate court erred by considering hearsay statements. Thus, the claim of error is waived. *Id*.

### 2. Expert Opinion

Doe argues the magistrate court abused its discretion when it allowed Jeanne Racer to give expert opinion on a subject for which she was not qualified as an expert. Specifically, Jeanne Racer testified that narcissistic personality disorder required "long term" treatment. Doe concludes:

> The Magistrate Court abused its discretion by finding that Jeanne Racer was qualified to render an expert opinion regarding the treatment of narcissistic personality disorder. The magistrate improperly relied on Ms. Racer's testimony in making the finding that Doe "would require long term mental health treatment." R., p. 877. This contributed to the Magistrate's finding that Doe's child was neglected within the meaning of Idaho Code § 16-2005(1)(d). R., p. 881.

Idaho Code section 16-2005(1)(d) provides:

> The court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and that . . . [t]he parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child.

The magistrate court determined that it was in J.M.'s best interest to terminate Doe's parental rights under Idaho Code section 16-2005(1)(b) because there was clear and convincing evidence that Doe had neglected J.M pursuant to Idaho Code section 16-2002(3)(b), and under Idaho Code section 16-2005(1)(d) because Doe would be unable to discharge his parental responsibilities for a prolonged indeterminate period of time, which would be injurious to J.M's health, morals, or well-being.

"When a decision is based upon alternative grounds, the fact that one of the grounds may be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the other grounds." *Andersen v. Prof'l Escrow Servs., Inc.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005) (internal quotations omitted). Thus, because the magistrate court's decision may be affirmed on the alternative grounds of Idaho Code section 16-2005(1)(b), we may disregard any alleged error by the magistrate court by considering Jeanne Racer's statements in its Idaho Code section 16-2005(1)(d) analysis.[2]

### E. Doe's claims that the magistrate court erred by considering matters outside of the record are either without merit or not supported by argument or authority.

Doe argues the magistrate court erred by considering matters outside of the record in reaching its decision. Specifically, the magistrate court took judicial notice of Boundary County Case No. CR-2016-0237, where the State had charged Doe with theft of a firearm (an AK-47) and for being a felon in possession of a firearm. Doe further claims the magistrate court improperly referred to an alleged diagnosis of narcissistic personality disorder in rendering its decision to terminate Doe's parent rights. Finally, Doe concludes:

> On appeal, the appellate court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence *in the record* to support the decision. *Doe v. Doe*, 150 Idaho 46, 49 (2011). (Emphasis added.) Consideration of evidence outside of the record made at the trial violates Doe's Constitutional right to due process. *Application of Citizens Utils. Co.*, 82 Idaho 208, 215 (1960). *Citizens Utils. Co.* dealt with public utility commission administrative proceedings. If due process requires that only evidence in the record may be considered in public utility commission administrative proceedings, then surely only evidence in the record made at trial may be considered in a termination of parental rights case, which involves a fundamental liberty interest.

---

[2] Notably, Doe does not argue that Jeanne Racer's testimony concerning the length of treatment Doe may require was a significant factor in the magistrate court's conclusion that terminating Doe's parental rights was in J.M.'s best interest.

Doe is incorrect. First, Doe's claim that the matter of the AK-47 was outside of the record is a significant exaggeration. Although the criminal case number and existence of criminal charges do not appear in the record, Doe testified under direct examination that he had been investigated for the theft of an AK-47:

Q: Okay. So you've been investigated, potentially, for an AK-47 theft.

[Doe]: Yeah.

Q: Did you talk with Carol Negley about that?

[Doe]: Carol Negely about an AK-47 theft?

Q: Right.

[Doe]: About stuff coming up missing on the property . . . . .

Q: Right.

[Doe]: . . . . . yes I did.

Second, Doe's claim that the magistrate court improperly referred to an alleged diagnosis of narcissistic personality disorder is also without merit. As discussed above, the portions of the magistrate court's memorandum opinion Doe cites to either refer to the testimony of Jeanne Racer, or make no reference to the source of the diagnosis. More importantly, Doe testified that he had been diagnosed as having a narcissistic personality disorder:

Q: Okay. So you have been diagnosed?

[Doe]: yeah.

Q: With narcissistic personality disorder?

[Doe]: I guess, yes.

Finally, Doe's claim that, "[c]onsideration of evidence outside of the record made at the trial violates Doe's Constitutional right to due process," is not supported by argument or authority. "[I]f the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). Doe does not even attempt to equate his sole cited authority to this case; rather, Doe simply opines:

> If due process requires that only evidence in the record may be considered in public utility commission administrative proceedings, then surely only evidence in the record made at trial may be considered in a termination of parental rights case, which involves a fundamental liberty interest.

Because Doe's due process claim is not supported by argument or authority, we do not consider it.

**F. The magistrate court's decision was supported by substantial and competent evidence.**

The magistrate court concluded it was in J.M.'s best interest to terminate Doe's parental rights under Idaho Code sections 16-2005(1)(b) and (d) because there was clear and convincing evidence that Doe had neglected J.M pursuant to Idaho Code section 16-2002(3)(b), and/or Doe would be unable to discharge his parental responsibilities for a prolonged indeterminate period of time, which would be injurious to J.M's health, morals, or well-being.

Doe offers no meaningful argument for this Court to consider. On the issue of neglect under Idaho Code sections 16-2005(1)(b) and 16-2002(3), Doe's only argument is that: "Doe has substantially complied with the requirements of his case plan." However, Doe offers no argument or authority in support of his implicit contention that only substantial compliance with the case plan is required under Idaho Code section 16-2002(3).

Doe contends that he completed the Life Skills class and he offers the conclusory statement that he "has been able to demonstrate what he learned in the class in his interactions with his child." Doe notes that he did attend some mental health treatment but admits he did not actually complete it. Doe reasons: "The evidence in the record shows that Doe has been able to maintain sobriety and successfully attend substance abuse treatment for substantial periods of time, as well as undergo drug testing." On the issue of inability to discharge parental responsibilities under Idaho Code section 16-2005(1)(d), Doe reasons he has shown during the pendency of the case that he had the ability to maintain stable housing, maintain sobriety for substantial periods of time, and intermittent employment. Doe concludes: "Therefore, hope is not lost that he can, if given more time, to [sic] maintain the stability needed to be able to take the child back in his care." On the issue of best interests of the child, Doe simply concludes:

> Evidence presented at the trial established that severing the parent-child relationship between Doe and his child would be devastating to the child. The child knows that Doe is his father and they have a close relationship. Within the limitations imposed by the Department for visits, Doe and the child have had a normal father-child relationship, and engage in typical father-child activities together. It would be in the child's best interest to continue the parent-child relationship between the child and Doe.

Doe's arguments are without merit.

Idaho Code section 16-2005(1)(b) provides: "The court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and . . .[t]he parent has neglected or abused the child." I.C. 16-2005(1)(b). "Neglect" is defined under Idaho Code section 16-2002(3)(b) as:

> The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and . . . [t]he department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and . . . [r]eunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

I.C. § 16-2002(3)(b). Doe does not dispute that J.M. has been in the custody of the Department for the required period of time or that reunification has not been accomplished. The issue then becomes whether Doe has failed to comply with the magistrate court's case plan. In its memorandum opinion, the magistrate court considered six of the requirements under the case plan and concluded that Doe had failed to complete four of them. We find substantial and competent evidence in the record supports the magistrate court's finding that Doe failed each case plan requirement considered by the magistrate court; however, the magistrate court's discussion of requirement number three is the most compelling.

### 3. "[Doe] shall submit to random UA testing or hair follicle testing"…"NO SHOWS or [dilute] test results will be considered a failure."

> The record before the Court on this aspect of the service plan is overwhelming. No serious argument can be advanced that [Doe] even came close to compliance with his clean drug testing requirements. On May 15, 2014, [Doe] tested positive for methamphetamines and admitted using to his probation officer in case number CR-13-1027. [Doe] enrolled in treatment and initially did well with his treatment program at Rawlings from latter June 2014 to November 16, 2014. He had no positive test results during that time period. [Doe] then dropped out of his treatment program and tested positive for methamphetamines again on November 17, 2014. As a result of that probation violation, and others, [Doe's] probation was revoked in that case and (another judge) ordered him to serve 120 days in jail.

> Following his release from custody, the Department made arrangements for [Doe] to receive another GAIN assessment from Rawlings. [Doe] disclosed during that assessment that he had increased his intravenous methamphetamine usage. [Doe] showed up for his counseling sessions on June 12 and 15, 2015 and then dropped out of treatment again. Following [Doe] being trespassed from the Rawlings property, the Department made arrangements with Eagle Drug and Alcohol Testing in Sandpoint to conduct random drug tests of [Doe]. Ms. Holmann-Faria from Eagle specifically explained to [Doe] that he was assigned to

12

the "red" group and had to appear for testing whenever the voice message advised that it was the red group's turn to test that day. [Doe] never showed up for his random testing on July 9, 16, 22, 30, August 2, 5, 13, or 15 of 2015, when his group was called. [Doe's] explanation that he was confused and thought he was in the "white" group lacked credibility. [Doe's] volatile and threatening behavior toward Eagle Drug and Alcohol testing soon resulted in his trespass from that facility as well.

Having burned all his local bridges, Ms. Racer then made arrangements for [Doe] to test at Alliance in Coeur d'Alene, with the Department paying for his fuel expense. [Doe] refused to participate in testing, saying it was putting too much mileage on his mother's car and he was "tired of jumping through hoops".

The Court then entered an order on November 5, 2015 for [Doe] to do the ten panel drug test locally with the [sic] Tad Brown of the Boundary county Probation Department. [Doe] tested positive for methamphetamines on November 12, 2015 and stopped showing up for testing 11 days later. [Doe] has clearly and completely failed to comply with his clean testing requirement of the service plan.

The magistrate court's thorough and reasoned memorandum opinion is supported by substantial and competent evidence that Doe failed to comply with the requirements of his case plan.

## IV. CONCLUSION

We affirm the magistrate court's decree and judgment terminating Doe's parental rights. We award costs on appeal to IDHW.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.