# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48930

| | |
|---|---|
| In the Interest of: John Doe I and Jane Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) **Filed: November 1, 2021** |
| Petitioner-Respondent, | ) ) **Melanie Gagnepain, Clerk** |
| v. | ) ) **THIS IS AN UNPUBLISHED** |
| JOHN DOE (2021-25), | ) ) **OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| Respondent-Appellant. | ) ) ) |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Brent Ferguson, Magistrate.

Judgment terminating parental rights, affirmed.

Ratliff Law Offices, Chtd., Elmore County Public Defender; Matthew F. Keen, Mountain Home, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

John Doe appeals from the magistrate court's judgment terminating his parental rights. John Doe argues the magistrate court erred in finding that it was not impossible for John Doe to comply with the case plan. John Doe also argues the magistrate court erred by presiding over the case. The magistrate court's judgment terminating John Doe's parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

John Doe is the father of J.G. and I.G. John Doe's spouse,[1] Jane Doe, is the mother of K.G., J.G., and I.G. In September 2018, K.G., J.G., and I.G. were removed from the Does' home and placed in foster care. The magistrate court granted the Department of Health and Welfare (Department) temporary custody of the children and subsequently held an adjudicatory hearing where the Does stipulated to having an unstable home environment. Approximately one month later, the magistrate court approved case plans for John Doe and Jane Doe and authorized an extended home visit for K.G., J.G., and I.G. The children remained in the Does' home for approximately eleven months, but were again removed from the home and returned to the care of the Department in October 2019.

In August 2020, the State petitioned to terminate John Doe's and Jane Doe's parental rights. In spring 2021, the magistrate court found by clear and convincing evidence that John Doe neglected his children and that termination of John Doe's parental rights is in the best interests of the children. The magistrate court entered a judgment terminating John Doe's parental rights to J.G. and I.G. John Doe timely appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*,

---

[1]     John Doe and Jane Doe have been in a relationship since December 2009 and hold themselves out as husband and wife but are not legally married.

143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

**III.**

**ANALYSIS**

On appeal, John Doe does not dispute the magistrate court's conclusion that he failed to comply with his case plan, that he neglected his children by failing to provide proper parental care and control, or that termination is in the best interests of the children. Instead, John Doe argues there is not substantial and competent evidence to support the magistrate court's finding that John Doe's failure to complete the tasks was due to John Doe's choices and not because of impossibility. John Doe also asserts the magistrate court erred by presiding over the case. In response, the State argues this Court should affirm the judgment terminating John Doe's parental rights because John Doe failed to challenge the magistrate court's finding that he neglected his children by failing to provide proper parental care and control. The State further argues John Doe waived any argument regarding impossibility by failing to raise the issue in the magistrate court. Finally, the State argues John Doe waived any argument that the magistrate court erred by presiding over the case by failing to establish an adequate record for review.

A. **Substantial and Competent Evidence Supports the Magistrate Court's Finding of Neglect**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

3

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court terminated John Doe's parental rights on the basis that he neglected his children pursuant to Idaho Code § 16-2002(3)(a) and I.C. § 16-2002(3)(b). Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protection Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b). Failure to provide children with stable and safe housing may be considered in a neglect determination. *See Matter of Doe Children*, 162 Idaho 69, 77-78, 394 P.3d 112, 120-21 (Ct. App. 2017).

The magistrate court found that John Doe neglected his children because he failed to comply with his court-ordered case plan and because he failed to provide proper parental care and control for his children. Regarding John Doe's affirmative defense of impossibility, the magistrate court found that John Doe had the ability to complete his case plan but chose not to. John Doe does not dispute the magistrate court's conclusion that he failed to complete his case plan or that he failed to provide proper parental care and control for his children. Instead, John Doe asserts that his compliance with the incomplete tasks of the case plan was rendered impossible by the COVID-19 pandemic and the Department's statement that the Does were required to secure a three-bedroom residence. The State asserts that John Doe waived his right to assert an impossibility defense because he did not timely raise the issue below and, alternatively, that the magistrate court correctly found that it was not impossible for John Doe to complete his case plan.

4

If the court grants a judgment on more than one independent basis and the appellant does not challenge each basis for termination, then we must affirm the judgment. *Idaho Dep't of Health & Welfare v. Doe* (2017-36), 163 Idaho 274, 278, 411 P.3d 1175, 1179 (2018) (noting court need not address parent's argument because "magistrate court's order contains additional, unchallenged findings of neglect that must be affirmed"); *Idaho Dep't of Health & Welfare v. Doe* (2016-09), 163 Idaho 707, 711, 418 P.3d 1216, 1220 (2016) ("When a judgment is granted on alternative grounds and one of them is not addressed on appeal, we must affirm the judgment."). Because John Doe does not challenge the magistrate court's finding that he neglected the children by failing to provide proper parental care and control, we affirm the magistrate court's judgment finding that John Doe neglected his children on those grounds.

Additionally, and notwithstanding the State's argument that John Doe waived consideration of the issue, the magistrate court's finding that John Doe failed to comply with his case plan by choice, not impossibility, is supported by substantial and competent evidence. The incomplete tasks in John Doe's case plan required him to demonstrate his ability to provide for his children by verifying his income and maintaining a safe and stable home free of hazards; attend to his children's physical, dental, developmental, and mental health needs; and participate in family preservation services (FPS) and gain demonstrable skills.

In September 2018, John Doe moved out of the home he previously resided in with Jane Doe due to a no-contact order with Jane Doe's now adult son.[2] At some point, it appears John Doe was able to return to the residence. In November 2018, the Department approved an extended home visit to allow K.G., J.G., and I.G. to return to the home. In October 2019, John Doe and Jane Doe lost the residence and John Doe, without notifying the Department, took the children to live with a former foster parent for K.G. The Department informed the Does that they needed to secure a three-bedroom residence for the children, but within a week of that notification, the Department notified the Does that a two-bedroom apartment would be acceptable.[3] John Doe

---

[2]     Jane Doe's older son and daughter were originally taken into foster care, but they reached age eighteen during the pendency of the case and are no longer in the care of the Department. Thus, they are not the subject of this case.

[3]     At trial, a Department employee testified that within the week after the Department informed John Doe that he needed to secure a three-bedroom apartment, it corrected itself and informed John Doe that he needed to secure only a two-bedroom apartment. The Department also acknowledged that a two-bedroom home would have been sufficient. Notwithstanding this

located a three-bedroom apartment in October 2019, but he felt it was "just too small." After rejecting this housing option, John Doe took no significant steps to secure any suitable housing. From October 2019 to March 2021, John Doe lived with friends or in a local motel. Three weeks prior to trial and more than two years after the children were taken into the care of the Department, the Does obtained suitable housing.

On appeal, John Doe relies, in part, on the Department's statement that he needed to secure a three-bedroom apartment as a basis for his impossibility defense. The magistrate court concluded that although the Department made John Doe's search for a residence more difficult by telling the Does they needed a three-bedroom residence, it was not impossible for John Doe to secure suitable housing, as evidenced by the fact that John Doe located, but rejected, a three-bedroom apartment in October 2019. The magistrate court found that although John Doe eventually complied with the housing requirement, it was too late to successfully reunite with the children.

As to the COVID-19 pandemic as a basis for his impossibility claim, aside from his testimony that the COVID-19 pandemic led to an increase in the cost of housing, John Doe provided no evidence in support of his argument that the pandemic rendered his search for housing impossible. John Doe's ability to secure housing shortly before trial demonstrates that compliance with this task was not impossible. As a result, substantial and competent evidence supports the magistrate court's finding that John Doe was directly responsible for his failure to obtain suitable housing in timely manner.

In addition to failing to secure suitable housing, John Doe did not demonstrate the ability to meet his children's needs. John Doe did not provide any medical care for his children. John Doe claimed he was unable to attend appointments because restrictions related to the COVID-19 pandemic allowed only one person in addition to the patient to attend the appointments. In contrast, the children's foster mother testified that she had difficulty getting John Doe to attend any doctor or therapy appointments or to care for the children in any significant way. For example, John Doe did not attend any appointments between October 2019 and March 2020, before pandemic-related restrictions were imposed. When asked to take the children to appointments, John Doe refused because attending the appointments would have precluded him from getting sufficient sleep due to his work schedule. John Doe testified that he did not consider altering his

---

testimony, the magistrate court found that the requirement for a three-bedroom apartment was in place between October 2019 and March 2021.

work schedule to allow him to attend his children's appointments. In total, John Doe attended no more than two of I.G.'s appointments and he did not attend any appointments for J.G. As the magistrate court stated, this was "simply a matter of priority"; John Doe was aware of the requirements outlined in his case plan and chose not to attend appointments. As a further example of John Doe's lack of engagement with his children's medical needs, prior to the pandemic and shortly after being placed in foster care, I.G. needed medical care before the Department had formally approved the foster placement. The foster parent was unable to reach John Doe to get the necessary approval for the care. Consequently, the foster parent could not obtain medical care for I.G. until the Department intervened and approved the foster parent as a placement for I.G.

With respect to the FPS task, John Doe did participate in FPS from January 2019 to July 2019. The FPS specialist initially assigned to the Does' case worked with John Doe to identify safety concerns in their home, including moldy food, lice, bed bugs, and rodent infestations. The FPS specialist reported that John Doe would not engage in visits or put forth meaningful effort towards improving his parenting skills. In July 2019, many of the safety concerns identified when John Doe initially engaged with FPS remained in the home. When FPS informed John Doe that a frequent visitor to their home was a registered sex-offender, John Doe continued to allow the individual to visit his home and to interact with the children. On one occasion, the individual was present with the children while both John Doe and Jane Doe were absent from the home.

John Doe asserts that had he been able to secure a residence, he would have been able to demonstrate the skills he learned through participating in FPS. This argument is unpersuasive. Six months after John Doe began working with FPS, many of the safety concerns initially identified were still present in the home, with the addition of allowing a known registered sex-offender to interact with the children. In fact, after participating with FPS, when John Doe voluntarily relinquished the children to the former foster parent in October 2019, the clothing he left with the children was unserviceable and the food he left was expired. Throughout this case, John Doe had many opportunities to demonstrate the skills he allegedly learned through FPS but did not do so.

The magistrate court's conclusion that it was not impossible for John Doe to comply with his case plan and that John Doe was responsible for his failure to comply with his case plan is supported by substantial and competent evidence. Additionally, John Doe does not challenge the

7

magistrate court's finding that termination of his parental rights is in the best interests of the children. As a result, we affirm the magistrate court's order terminating John Doe's parental rights.

**B.     The Magistrate Court Did Not Err by Presiding Over the Case**

John Doe asserts the magistrate court erred by presiding over this case because, at the time of trial, the magistrate judges of Elmore County were represented by the Attorney General's Office in a civil lawsuit. John Doe asserts that because the Department is also represented by the Attorney General's Office, it was error for the magistrate court to preside over this case.

Issues not raised below are typically not considered for the first time on appeal. *Matter of Doe II*, 169 Idaho 82, 86, 491 P.3d 644, 648 (Ct. App. 2021). The minutes from an adjudicatory hearing in March 2021 indicate that the issue of a conflict for the magistrate court was raised. However, the minutes do not provide any detail as to what the alleged conflict was or who raised the issue. No objection or motion for disqualification was filed at any time during the pendency of the case. In the absence of a motion for disqualification, this Court will not review that issue on appeal. *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 563, 568, 249 P.3d 362, 367 (2011).

However, even if John Doe had properly raised the issue below, his argument fails on appeal. Denial of a motion for disqualification of a judge is reviewed under an abuse of discretion standard. *Idaho Dep't of Health & Welfare v. Doe*, 161 Idaho 660, 664, 389 P.3d 946, 950 (2016). A judge may be disqualified for cause where it is shown that the judge is biased or prejudiced for or against any party or the case in the action. *Id.* However, a judge may not be disqualified for prejudice unless it is shown that the prejudice is directed against the party and is of such nature and character as would render it improbable that the party would receive a fair and impartial trial. *Id.*

Beyond his conclusory statement that the "appearance of a possibility of impartiality should give one pause," John Doe provides no argument or authority in support of this claim. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). Furthermore, there is no indication in the record that the magistrate judge was biased or prejudiced against John Doe. Thus, John Doe has failed to show the magistrate court erred by presiding over the case.

**IV.**

**CONCLUSION**

The magistrate court's finding that John Doe neglected his children is supported by substantial and competent evidence and John Doe does not challenge the magistrate court's conclusion that terminating his parental rights is in the best interests of the children. John Doe has failed to show the magistrate court erred by presiding over this case. Accordingly, the magistrate court's judgment terminating John Doe's parental rights is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.