# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48931

| | | |
|---|---|---|
| In the Interest of:  Jane Doe I, John Doe I, and Jane Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed:  November 1, 2021 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JANE DOE (2021-26), | ) ) | BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Elmore County.  Hon. Brent Ferguson, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Rachel M. Hamilton, Elmore County Conflict Public Defender, Mountain Home, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. Jane Doe argues the magistrate court erred in finding that she neglected her children, that it was not impossible for her to comply with the case plan, and that termination is in the children's best interests.  Jane Doe also argues the magistrate court erred by presiding over the case.  The magistrate court's judgment terminating Jane Doe's parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe is the mother of K.G., J.G., and I.G. Jane Doe's spouse,[1] John Doe, is the father of J.G. and I.G. In September 2018, K.G., J.G., and I.G. were removed from the Does' home and placed in foster care. The magistrate court granted the Department of Health and Welfare (Department) temporary custody of the children and subsequently held an adjudicatory hearing, where the Does stipulated to having an unstable home environment. Approximately one month later, the magistrate court approved case plans for Jane Doe and John Doe and authorized an extended home visit for K.G., J.G., and I.G. The children remained in the Does' home for approximately eleven months, but were again removed from the home and returned to the care of the Department in October 2019.

In August 2020, the State petitioned to terminate Jane Doe's and John Doe's parental rights. In spring 2021, the magistrate court found by clear and convincing evidence that Jane Doe neglected her children and that termination of Jane Doe's parental rights is in the best interests of the children. The magistrate court entered a judgment terminating Jane Doe's parental rights to K.G., J.G. and I.G. Jane Doe timely appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*,

---

[1] Jane Doe and John Doe have been in a relationship since December 2009 and hold themselves out as husband and wife but are not legally married.

143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

**III.**

On appeal, Jane Doe argues the magistrate court erred in finding that she neglected her children, that it was not impossible for her to complete her case plan, and that termination of her parental rights is in the children's best interests. Jane Doe also asserts that the magistrate court erred by presiding over the case. In response, the State argues the magistrate court's findings that Jane Doe neglected her children and that termination of Jane Doe's parental rights is in the children's best interests are supported by substantial and competent evidence. The State further argues Jane Doe waived any argument regarding impossibility by failing to give advance notice of the defense prior to trial. Finally, the State argues Jane Doe waived any argument that the magistrate court erred by presiding over the case by failing to establish an adequate record for review.

**A.     Substantial and Competent Evidence Supports the Magistrate Court's Finding of Neglect**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities

for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court terminated Jane Doe's parental rights on the basis that she neglected her children pursuant to Idaho Code § 16-2002(3)(a) and I.C. § 16-2002(3)(b). Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protection Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b). Failure to provide children with stable and safe housing may be considered in a neglect determination. *See Matter of Doe Children*, 162 Idaho 69, 77-78, 394 P.3d 112, 120-21 (Ct. App. 2017).

The magistrate court found that Jane Doe neglected her children because she failed to provide proper parental care and control for her children and failed to comply with her court-ordered case plan. Although Jane Doe asserts the magistrate court's conclusion that she neglected her children is not supported by substantial and competent evidence, she does not dispute the magistrate court's finding that she failed to provide proper care and control for her children. If the court grants a judgment on more than one independent basis and the appellant does not challenge each basis for termination, then we must affirm the judgment. *Idaho Dep't of Health & Welfare v. Doe* (2017-36), 163 Idaho 274, 278, 411 P.3d 1175, 1179 (2018) (noting court need not address parent's argument because "magistrate court's order contains additional, unchallenged findings of neglect that must be affirmed"; *Idaho Dep't of Health & Welfare v. Doe* (2016-09), 163 Idaho 707, 711, 418 P.3d 1216, 1220 (2016) ("When a judgment is granted on alternative grounds and one of them is not addressed on appeal, we must affirm the judgment."). Because Jane Doe does not challenge the magistrate court's finding that she neglected the children by failing to provide proper parental care and control, we affirm the magistrate court's finding that Jane Doe neglected her children on those grounds.

4

Next, Jane Doe recognizes that she did not complete her case plan, but argues that her compliance with the incomplete tasks of the case plan was rendered impossible by the COVID-19 pandemic and the Department's inaccurate statement that the Does were required to secure a three-bedroom residence in order to reunify with the children. The State asserts that Jane Doe waived her right to assert an impossibility defense because she did not timely raise the issue below and, alternatively, that the magistrate court correctly found that it was not impossible for Jane Doe to complete her case plan.

Notwithstanding the State's argument that Jane Doe waived this issue, in this case, the magistrate court found by substantial and competent evidence that Jane Doe was directly responsible for non-compliance with the requirements of her case plan. The magistrate court concluded that although the Department made Jane Doe's search for a residence more difficult by telling the Does they needed a three-bedroom residence, it was not impossible for Jane Doe to secure suitable housing. The magistrate court further found that although Jane Doe eventually complied with the housing requirement of her case plan, it was too late to successfully reunite with her children.

As to the COVID-19 pandemic as a basis her impossibility defense, Jane Doe references testimony from the guardian ad litem, who stated that she understood that the Does may have had difficulty finding housing during the pandemic. Nonetheless, Jane Doe's ability to secure housing shortly before trial demonstrates that compliance with this task was not impossible. Moreover, failing to find adequate housing was not the only element of the case plan that Jane Doe did not complete. Jane Doe's case plan required her to demonstrate her ability to provide for her children by verifying her income and maintaining a safe and stable home free of hazards; attend to her children's physical, dental, developmental, and mental health needs; participate in family preservation services (FPS) and gain demonstrable skills; identify concurrent planning options if reunification was not possible; sign a release of all information for all facilities from which she received mental health assessments or treatment; and arrange and attend scheduled visits with the children and demonstrate her ability to appropriately bond with her children and meet their emotional needs.

In September 2018, Jane Doe lived in Mountain Home and John Doe had moved out of the home due to a no-contact order with Jane Doe's now adult son.[2] At some point, it appears John Doe was able to return to the residence. In November 2018, the Department approved an extended home visit to allow K.G., J.G., and I.G. to return to the home. In October 2019, Jane Doe and John Doe lost the residence and Jane Doe was arrested. After losing the residence and without notifying the Department, Jane and John Doe took the children to live with a former foster parent for K.G. The Department informed the Does that they needed to secure a three-bedroom residence for the children, but within a week of that notification, the Department notified the Does that a two-bedroom apartment would be acceptable.[3]

Jane Doe was incarcerated from October 2019 to approximately April 2020. Following her release from custody, Jane Doe moved into a halfway house for two months and then moved into a local motel with John Doe. Three weeks prior to trial, more than two years after the children were taken into the Department's custody, the Does obtained suitable housing. At trial, Jane Doe admitted that she did not obtain housing as required by the case plan. Jane Doe testified that she spent eight to twelve hours a day attempting to locate acceptable housing. The magistrate court found this testimony to be exaggerated and not credible.

Not only did Jane Doe fail to secure housing, she failed to secure housing free from hazards given the rodent and insect infestations in Doe's home during the pendency of the case. Although she argues the magistrate court failed to consider John Doe's testimony regarding the presence of bed bugs in the Does' home, in essence, Jane Doe asks this Court to reweigh the evidence, which we will not do. *See Doe*, 144 Idaho at 842, 172 P.3d at 1117. Thus, the magistrate court's finding that Jane Doe failed to secure safe and stable housing is supported by substantial and competent evidence.

---

[2]     Jane Doe's older son and daughter were originally taken into foster care, but they both reached age eighteen during the pendency of the case and are no longer in the care of the Department. Thus, they are not the subject of this case.

[3]     At trial, a Department employee testified that within the week after the Department informed John Doe that he needed to secure a three-bedroom apartment, it corrected itself and informed John Doe that he needed to secure only a two-bedroom apartment. The Department also acknowledged that a two-bedroom home would have been sufficient. Notwithstanding this testimony, the magistrate court found that the requirement for a three-bedroom apartment was in place from October 2019 to March 2021.

Additionally, Jane Doe did not provide any medical or financial care for the children. Jane Doe testified that she did not pay child support while her children were in the care of the Department because she was never asked to do so. Jane Doe provided some clothing and food when she and John Doe voluntarily relinquished custody of the children, but the clothing was unserviceable and the food was expired. Shortly after being placed in foster care and before the Department formally approved the foster placement, I.G. needed medical care and the foster parent was unable to reach Jane Doe to get the necessary approval for the care. Consequently, the foster parent could not obtain medical care for I.G. until the Department intervened and approved the foster parent as a placement for I.G. The foster parent had difficulty getting Jane Doe to attend any doctor or therapy appointments or to care for the children in any significant way. Jane Doe claimed she was unable to attend appointments because COVID-19 restrictions allowed only one person to attend. In total, Jane Doe attended no more than two of I.G.'s appointments and she did not attend a single appointment for K.G. or J.G. Thus, the magistrate court's finding that Jane Doe did not attend to her children's physical, dental, developmental, and mental health needs is supported by substantial and competent evidence.

With respect to the FPS task, Jane Doe did participate in FPS from January 2019 to July 2019. The FPS specialist initially assigned to the Does' case worked with Jane Doe and John Doe to identify safety concerns in their home, including moldy food, lice, bed bugs, and rodent infestations. In July 2019, many of the safety concerns identified when the Does first engaged with FPS remained in the home. The FPS specialist informed the Does that a frequent visitor to their home was a registered sex-offender and explained to Jane Doe that it was inappropriate to allow the individual to care for the children. Jane Doe continued to allow the individual to visit their home and interact with the children; on one occasion, the individual was present with the children while both Jane Doe and John Doe were absent from the home.

Jane Doe disagrees with the magistrate court's finding that although Jane Doe attended scheduled visits with her children, she did not interact with the children. The magistrate court found that rather than engaging with her children, Jane Doe focused primarily on her phone and often ended visits early. In support of her argument challenging the magistrate court's conclusion regarding this task in the case plan, Jane Doe argues the magistrate court discounted testimony from Jane Doe's adult daughter, who testified that the children enjoyed their visits with Jane Doe. In essence, Jane Doe asks this Court to reweigh the evidence, which we will not do. *See Doe*, 144

7

Idaho at 842, 172 P.3d at 1117. Thus, the magistrate court's finding that Jane Doe did not arrange and attend scheduled visits with the children and demonstrate her ability to appropriately bond with her children and meet their emotional needs, is supported by substantial and competent evidence.

In sum, Jane Doe failed to complete several of the tasks in her case plan, not just the task to find safe and secure housing. As such, the magistrate court's finding that Jane Doe neglected her children by failing to complete the tasks in her case plan is supported by substantial and competent evidence.

**B.     Substantial and Competent Evidence Supports the Magistrate Court's Finding That Termination Is in the Best Interests of the Children**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the children to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the children's care after the children are placed in protective custody, the improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the children to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Jane Doe challenges the magistrate court's conclusion that termination of her parental rights is in the children's best interests, arguing that the magistrate court failed to follow the legal standard requiring a presumption in favor of reunification and failed to adequately consider Jane Doe's progress. In support, Jane Doe argues the magistrate court did not fully analyze the effort Jane Doe made in her case and did not adequately consider the testimony from Jane Doe's adult daughter that Jane Doe had positive interactions with the children. Jane Doe is again asking this Court to reweigh the evidence, which we decline to do.

Substantial and competent evidence supports the magistrate court's conclusion that termination of Jane Doe's parental rights is in the children's best interests. At the end of the termination trial, K.G., J.G., and I.G. had been in the Department's care for over thirty-two months.

8

When the children were first placed in foster care they were lethargic, undernourished, and exhibited significant symptoms of neglect. K.G. would mother and care for J.G. and I.G. K.G. was failing all of her classes in school. J.G. struggled with anger and outbursts and suffered from nightmares multiple times a week. I.G. displayed some inappropriate behavior including drinking from the toilet. I.G was also behind in her development in various areas and needed speech therapy.

While in foster care, the children's conditions improved substantially. K.G. became active in dance and cooking classes and is now passing every class in school. J.G. completed therapy, no longer suffers from nightmares, and his anger issues have reduced significantly. The school gave J.G. an award for the most improved in math and reading. I.G. no longer displays inappropriate behavior or drinks from the toilet. While I.G. continues to receive speech and occupational therapy, she has learned multiple new skills including dressing herself, brushing her teeth, and holding a pencil.

During trial, Jane Doe did not testify that it was in the best interests of the children to return to her home. The magistrate court expressed concern over the lack of engagement by Jane Doe and her difficulty focusing on her children during supervised visits. The magistrate court found that Jane Doe was not involved in the care of her children beyond attending supervised visits. Additionally, the magistrate court found that the children thrived while in foster care and had developed positive, secure bonds with their foster family. The magistrate court's factual findings are supported by substantial and competent evidence, as is the magistrate court's conclusion that terminating Jane Doe's parental rights is in the best interests of the children.

## C.    The Magistrate Court Did Not Err by Presiding Over the Case

Jane Doe asserts the magistrate court erred by presiding over this case because, at the time of trial, the magistrate judges of Elmore County were represented by the Attorney General's Office in a civil lawsuit. Jane Doe asserts that because the Department is also represented by the Attorney General's Office, it was error for the magistrate court to preside over this case.

Issues not raised below are typically not considered for the first time on appeal. *Matter of Doe II*, 169 Idaho 82, 491 P.3d 644, 648 (Ct. App. 2021). The minutes from an adjudicatory hearing in March 2021 indicate that the issue of a conflict for the magistrate court was raised. However, the minutes do not provide any detail as to what the alleged conflict was or who raised the issue. No objection or motion for disqualification was filed at any time during the trial. In the

absence of a motion for disqualification, this Court will not review that issue on appeal. *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 563, 568, 249 P.3d 362, 367 (2011)

However, even if Jane Doe had properly raised the issue below, her argument fails on appeal. Denial of a motion for disqualification of a judge is reviewed under an abuse of discretion standard. *Idaho Dep't of Health & Welfare v. Doe*, 161 Idaho 660, 664, 389 P.3d 946, 950 (2016). A judge may be disqualified for cause where it is shown that the judge is biased or prejudiced for or against any party or the case in the action. *Id.* However, a judge may not be disqualified for prejudice unless it is shown that the prejudice is directed against the party and is of such nature and character as would render it improbable that the party would receive a fair and impartial trial. *Id.*

Jane Doe asserts, "The appearance of the Idaho Attorney General on behalf of the Department of Health and Welfare at the same time that the Idaho Attorney General appeared on behalf of the magistrate presiding over this case does give rise to a question of impartiality." Beyond this conclusory statement, Jane Doe provides no argument or authority in support of this claim. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). Furthermore, there is no indication in the record that the magistrate judge was biased or prejudiced against Jane Doe. Thus, Jane Doe has failed to show the magistrate court erred by presiding over the case.

## IV.

## CONCLUSION

The magistrate court's findings that Jane Doe neglected her children and termination of Jane Doe's parental rights is in the best interests of the children are supported by substantial and competent evidence. Jane Doe has failed to show the magistrate court erred by presiding over this case. Accordingly, the magistrate court's judgment terminating Jane Doe's parental rights is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.

10