IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47662

| | |
|---|---|
| In the Interest of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) Filed: May 6, 2020 |
| | ) |
| Petitioner-Respondent, | ) Karel A. Lehrman, Clerk |
| | ) |
| v. | ) |
| | ) |
| JANE DOE (2019-47), | ) |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Laurie A. Fortier, Magistrate.

Judgment terminating parental rights, affirmed.

Anthony Geddes, Ada County Public Defender; Joshua M. Wickard, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the judgment terminating her parental rights to her daughter (Daughter). Mother argues the magistrate court abused its discretion by admitting a "report" in evidence at the termination hearing under the business records exception to the hearsay rule, Rule 803(6) of the Idaho Rules of Evidence. Although we conclude the court erred by admitting the report, we affirm the court's termination of Mother's parental rights to Daughter.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the magistrate court's findings of fact in support of its written decision terminating Mother's parental rights to Daughter. Daughter was born in September 2014.[1] Law enforcement declared Daughter in imminent danger and removed her from Mother's custody on July 17, 2018, after one of Mother's older children reported seeing Mother use drugs in the house; an officer found drug paraphernalia in the house within Daughter's reach; and Mother admitted to using drugs in her children's presence.

The Department of Health and Welfare (Department) filed a petition for temporary custody of Daughter under the Child Protection Act (CPA). The magistrate court granted the Department's petition, and in September 2018, the court approved a case plan for Mother to complete. This case plan required Mother to provide a safe and stable home environment for Daughter; to complete a substance abuse assessment and follow its recommendations; to meet Daughter's basic needs; and to have regular contact with Daughter. During a majority of the case plan's pendency, however, Mother was incarcerated including from late 2018 until early 2019 and then again beginning in June 2019. Mother's potential release date is July 2020.

Following Mother's second incarceration, the Department filed a petition in July 2019 to terminate Mother's parental rights to Daughter. On November 6, the magistrate court held a termination hearing. At the hearing, the social worker assigned to manage Mother's case testified. During the social worker's testimony, the prosecutor offered in evidence a document entitled "Narrative Report." The court admitted the Narrative Report as a business record under Rule 803(6) of the Idaho Rules of Evidence, over the hearsay objection of Mother's counsel.

Following the hearing, the magistrate court issued a written decision terminating Mother's parental rights to Daughter. The court ruled that Mother neglected Daughter under Idaho Code § 16-2005(1)(b) by failing "to provide stable housing, subsistence, education, medical, or other care and control" and also by failing to comply with her case plan. *See* I.C. § 16-1602(31) (defining "neglected"); I.C. § 16-2002(3)(a), (b) (same). Further, the court ruled Mother "is unable to discharge her parental responsibilities because she has been incarcerated throughout a majority of the time [Daughter] has been in foster care, continues to

---

[1] The identity of Daughter's father was never established, and the magistrate court ruled the putative father abandoned Daughter and "surrendered any right in relation to the child."

remain incarcerated, and it remains uncertain when she will be released from custody." Finally, the court ruled that terminating Mother's parental rights is in Daughter's best interests.

Mother timely appeals. The only issue Mother raises on appeal, however, is whether the magistrate court abused its discretion by admitting the Narrative Report in evidence at the termination hearing.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably

3

certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

We review for an abuse of discretion a trial court's determination as to the admissibility of evidence at trial. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.
## ANALYSIS

### A.    Inadmissibility of the Narrative Report

On appeal, Mother challenges the magistrate court's evidentiary ruling that the Department's Narrative Report was admissible as a business record under Rule 803(6). The Idaho Rules of Evidence govern the admissibility of evidence at a parental termination hearing. *See* Idaho Juvenile Rule 51(c) ("Where a petition to terminate parental rights has been filed in a C.P.A. case, the Idaho Rules of Evidence shall apply to proceedings on the petition to terminate."); *see also Idaho Dep't of Health & Welfare v. Doe*, 165 Idaho 33, 44, 437 P.3d 33, 44 (2019) (same). While I.C. § 16-2009 provides a court may admit and rely on "relevant and material information of any nature, including that contained in reports, studies or examinations," this Court has held that this statute is invalid to the extent it provides for the admission of evidence contrary to the Idaho Rules of Evidence. *State, Dep't of Health & Welfare v. Doe (2019-12)*, 165 Idaho 675, 679, 450 P.3d 323, 327 (Ct. App. 2019). Accordingly, "reports" offered in evidence at termination hearings, such as the Narrative Report at issue in this case, must comply with the Idaho Rules of Evidence. A report is not admissible if it contains hearsay, unless an exception to the hearsay rule provides for its admissibility.

Hearsay is a statement, other than one a declarant makes while testifying in trial or at a hearing, which a party offers in evidence for the truth of the matter asserted in the statement. I.R.E. 801(c)(2). Hearsay is inadmissible unless an exception to the rule against hearsay applies. I.R.E. 802. Rule 803(6) is such an exception and allows for the admission of a business record if

4

that record meets the rule's foundational requirements. Under Rule 803(6), "[a] record of an act, event, condition, opinion, or diagnosis" is admissible if the following requirements are met:

(A)    the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B)    the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C)    making the record was a regular practice of that activity;

(D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12); and

(E)    the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Rule 803(6)'s general requirements for the admission of business records are that the documents be produced in the ordinary course of business, at or near the time of occurrence and not in anticipation of trial. *Mitchell v. State*, 160 Idaho 81, 87, 369 P.3d 299, 305 (2016). These foundational requirements supply the degree of trustworthiness necessary to justify an exception to the rule against hearsay. *Id.* The circumstances underlying the business record's creation must necessarily imply a high degree of veracity. *Hurtado v. Land O'Lakes, Inc.*, 147 Idaho 813, 815, 215 P.3d 533, 535 (2009).

In *State v. Cunningham*, 164 Idaho 759, 435 P.3d 539 (2019), the Idaho Supreme Court discussed the importance of business records being prepared and used in the course of a regularly conducted business activity to ensure their reliability. *Id.* at 765, 435 P.3d at 545. In that case, the Court noted that "the reliability of business records is supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them and/or by a duty to make an accurate record as part of a continuing job or occupation." *Id.* (quoting 7 MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 803:6 (8th ed. 2018)).

Equally important is that "the record was made at or near the time by--or from information transmitted by--someone with knowledge." I.R.E. 803(6)(A). This requirement contemplates both that the person recording the information and that the supplier of the information must be under a duty to make an accurate record. "The essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information." *United States v. McIntyre*, 997 F.2d 687, 699 (10th Cir. 1993), *as amended on denial of reh'g* (Aug. 18, 1993); *see also United States v. Cecil*,

615 F.3d 678, 690 (6th Cir. 2010) ("[I]f the record is based on the statements of an informant rather than the first-hand observations of its author, the informant must also be acting under a business duty."); HANDBOOK OF FEDERAL EVIDENCE § 803:6 (noting all individuals providing and recording business information must be under duty to make accurate record). If the supplier of the information does not act under a duty to provide accurate information to the person recording that information on behalf of the business, then an essential link in the chain of information is broken, and the assurance of accuracy is undermined--even if the information may have been recorded with scrupulous accuracy. HANDBOOK OF FEDERAL EVIDENCE § 803:6. Absent every person in the chain acting under a duty of accuracy, Rule 803(6) becomes a conduit for the admission of third parties' unreliable hearsay statements.

Mother argues the Narrative Report does not meet the requirements of Rule 803(6), and the Department does not address this argument on appeal. A review of the Narrative Report as admitted in evidence shows that it is a sixty-eight-page document comprised of numerous entries containing information related to Mother's case. Almost all the entries are identified by "activity date," "recorded date," and "staff"--presumably indicating the date the activity occurred, when it was recorded, and who recorded it. Several of the entries are redacted to conceal the identity of the individuals providing the information to the Department.

As foundation for admitting the Narrative Report, the social worker testified:

Q. [I]n this case did you review the department's files to familiarize yourself with any child protection history?
A. Yes.
Q. What files did you review to do that?
A. I used electronic file systems from court reports to criminal court reports to any letters which were exchanged, school records, mental health records, medical records, substance abuse records, parenting records. Anything which was provided to the department.
Q. [I]s entering that type of information something that you as a social worker are required to do as a part of your job?
A. Yes.
Q. Is there a protocol or a practice where a department worker must enter that information within a certain time frame?
A. Yes. Any document which comes outside the department has to be entered within 24 hours. Case notes have to be completed by the 5th of each month.
Q. [W]hen you become a case manager for a family, do you take physical possession of the family's file?
A. Yes, I do.

6

Q.      [T]hen it becomes your responsibility to update that file?
A.      Yes, mine as well as any worker who has knowledge or interacts with [Mother].
Q.      [D]id you do that in this case.
A.      Yes.
Q.      And those are called case notes; is that correct?
A.      Yes.
Q.      Do those become a permanent part of the business records of the Department of Health & Welfare?
A.      Yes.
. . . .
Q.      [W]hat you have before you [is the Narrative Report]. Do you recognize this document?
A.      Yes, I do.
Q.      What is it?
A.      It's all of the records the [Department] has kept in the past year and a half.
Q.      Are those the case notes that we talked about earlier?
A.      Yes.

Following this exchange, the magistrate court admitted the entire sixty-eight-page Narrative Report in evidence under Rule 803(6), over the hearsay objection of Mother's counsel.

We hold that the magistrate court abused its discretion by admitting the entire Narrative Report based on the limited foundation the prosecutor offered to establish the document as a business record under Rule 803(6). Although a review of the Narrative Report shows some entries may arguably qualify as business records, many entries do not meet Rule 803(6)'s foundational requirements. Some examples of entries which are not admissible under Rule 803(6) include: (1) entries describing negative information about Mother provided to the Department by unidentified individuals who may not have a duty to the Department to provide accurate information; (2) entries containing double hearsay, namely information an unidentified person conveyed to another who in turn conveyed that information to the Department; and (3) entries failing to identify the Department employee entering the information in the Narrative Report.

The limited foundation the prosecutor provided for the Narrative Report's admission is inadequate to satisfy the foundational requirements of Rule 803(6). Although certain entries may have qualified as business records, the prosecutor did not identify those entries but rather moved to admit the entire Narrative Report. Mother's counsel objected on hearsay grounds and specifically noted some entries did not identify the individuals providing the information to the Department. In response to this hearsay objection, the prosecutor asserted that those entries were

7

not offered for the truth of the matter and, thus, were not hearsay. The magistrate court, however, did not limit its reliance on the Narrative Report simply to the fact that the Department received information regarding Mother. Rather, in its findings in support of its written decision terminating Mother's parental rights, the court repeatedly relied on the substance of the Narrative Report. This reliance included both citing to inadmissible entries in the Narrative Report and finding facts based on those entries. We hold that the court erred by admitting the Narrative Report in evidence.

**B.      Failure to Argue Substantial Right Affected**

The Department does not address whether the Narrative Report qualifies as a business record, but instead argues only that Mother failed to argue on appeal that the magistrate court's admission of the Narrative Report in evidence affected a substantial right, and as a result, she is not entitled to relief from the judgment terminating her parental rights. We agree.

Rule 103(a) of the Idaho Rules of Evidence provides that "a party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party." Similarly, Rule 61 of the Idaho Rules of Civil Procedure provides in relevant part that "no error in admitting or excluding evidence . . . is ground . . . for vacating . . . a judgment. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Based on these rules, the Idaho Supreme Court has declined to grant relief to an appellant who failed to argue a trial court's evidentiary error affected his substantial rights. *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012) ("[T]his Court has held that in cases where a trial court errs in the admission or exclusion of evidence, we will grant a new trial only if the error affected a substantial right.") (internal quotation marks omitted). Similarly, the Idaho Supreme Court has declined to vacate a judgment terminating parental rights where the appellant failed to argue the error affected his substantial rights. *Idaho Dep't of Health & Welfare v. Doe (2016-27)*, 161 Idaho 660, 665, 389 P.3d 946, 951 (2016) ("[B]ecause Doe failed to argue the alleged errors affected his substantial rights, we disregard any alleged error in admitting Exhibit No. 31."); *see also Idaho Dep't of Health & Welfare v. Doe (2015-21)*, 160 Idaho 154, 163, 369 P.3d 932, 941 (2016) (affirming termination of parental rights without reviewing court's abuse of discretion in admitting evidence because parent failed to demonstrate substantial right affected).

8

Mother does not identify any substantial right affected by the magistrate court's error in admitting the Narrative Report. Moreover, a review of the record shows the court's termination of Mother's parental rights is supported by substantial and competent evidence. *See Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65 (noting standard of review for substantial and competent evidence). Accordingly, we decline to vacate the judgment terminating Mother's parental rights.

**IV.**

**CONCLUSION**

We affirm the judgment terminating Mother's parental rights to Daughter.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.