# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49521

| | |
|---|---|
| In the Matter of: Jane Doe I, John Doe II, and John Doe III, Children Under Eighteen (18) Years of Age. | )<br>)<br>) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | )<br>) |
| Petitioner-Respondent, | )<br>) |
| v. | )<br>) |
| JOHN DOE (2022-05), | )<br>) |
| Respondent-Appellant. | )<br>) |

Filed: June 29, 2022

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY

---

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie Tucker, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Aaron Bazzoli, Canyon County Public Defender; Alex Brockman, Deputy Public Defender, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John Spalding, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

John Doe appeals from the magistrate court's judgment terminating his parental rights. Doe alleges evidentiary errors occurred at the termination trial and, without these errors, the magistrate court's findings that Doe neglected the children and termination is in the best interests of the children were not supported by substantial evidence. Doe fails to show that any alleged evidentiary errors impacted his substantial rights. Even without the evidence Doe alleges was admitted erroneously, the magistrate court's findings that Doe neglected the children and termination is in the best interests of the children were supported by substantial evidence. Accordingly, the judgment terminating Doe's parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe and Jane Doe (Mother) are married and the biological parents of L.M., K.M., and J.M. In July 2019, the Department of Health and Welfare (Department) received a report that after J.M.'s birth, his umbilical cord tested positive for methamphetamine and amphetamine. A few days later, based on neglect and lack of a stable home environment, the three children were removed from Doe and Mother's home and placed in foster care. The magistrate court granted the Department temporary custody of the children. The magistrate court held an adjudicatory hearing, entered an order finding it was contrary to the children's best interests to be returned to live with Doe or Mother, and ordered a case plan for Doe as part of reunification efforts.

At the six-month review hearing, the Department reported that domestic violence concerns with Doe had escalated and Mother's attorney requested a protection order. The magistrate court entered a protection order barring Doe from having any contact with Mother and entered an order suspending visitation between Doe and the children. Approximately five months later, the magistrate court reinstated supervised visitation between Doe and the children.

On January 5, 2021, the State filed a petition to terminate Doe's parental rights to the children. The termination trial began in mid-October 2021. After the trial, the magistrate court found Doe neglected the children and termination of his parental rights is in the best interests of the children. Accordingly, the magistrate court entered and judgment and terminated Doe's parental rights to L.M., K.M., and J.M. Doe timely appeals.

# II.

## STANDARD OF REVIEW

The decision whether to admit evidence at trial is generally within the province of the trial court. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a

reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe claims the magistrate court made evidentiary errors during the termination trial and the errors were "not harmless" because, without the errors, there was not substantial evidence to support the court's findings that Doe neglected the children and termination of his parental rights is in the best interests of the children. Even without the admission of the allegedly erroneous evidence, substantial evidence supports the magistrate court's findings that Doe neglected the children and termination of Doe's parental rights is in the best interests of the children.

### A.    Evidentiary Issues

Doe alleges the magistrate court erred by: (1) allowing Dr. DeLawyer to testify as an expert and admitting his psychological evaluation of Doe into evidence; (2) admitting the affidavit in support of shelter care and report of investigation; and (3) admitting Doe's probation officer's testimony over Doe's hearsay objections.

Idaho Rule of Evidence 103(a) provides that "a party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party." Similarly, Idaho Rule of Civil Procedure 61 provides, in the relevant part, that "no error in admitting or excluding evidence . . . is ground . . . for vacating . . . a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Based on these rules, the Idaho Supreme Court has declined to grant relief to an appellant who failed to show a trial court's evidentiary error affected his substantial rights. *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012) (holding where trial court errs in

3

admission or exclusion of evidence, appellate court will grant new trial only if error affected substantial right). Similarly, Idaho appellate courts have declined to vacate a judgment terminating parental rights where the appellant failed to show the error affected his substantial rights. *Idaho Dep't of Health & Welfare v. Doe* (2016-27), 161 Idaho 660, 665, 389 P.3d 946, 951 (2016) ("[B]ecause Doe failed to argue the alleged errors affected his substantial rights, we disregard any alleged error in admitting Exhibit No. 31."); *see also Idaho Dep't of Health & Welfare v. Doe* (2015-21), 160 Idaho 154, 163, 369 P.3d 932, 941 (2016) (affirming termination of parental rights without reviewing court's abuse of discretion in admitting evidence because parent failed to demonstrate substantial right affected); *Int. of Doe I*, 166 Idaho 788, 794, 464 P.3d 1, 7 (Ct. App. 2020) ("Mother does not identify any substantial right affected by the magistrate court's error in admitting the Narrative Report.").

Here, Doe fails to show that the alleged evidentiary errors impacted a substantial right and, while Doe states that the alleged evidentiary errors are not harmless, he fails to explain why. We will analyze each alleged evidentiary error in turn.

### 1. Dr. DeLawyer's testimony as an expert and admission of his psychological evaluation

Doe alleges the magistrate court abused its discretion by allowing Dr. DeLawyer to testify as an expert and admitting his psychological evaluation of Doe as evidence during the termination trial. Specifically, Doe contends the magistrate court erred because the State did not lay proper foundation to determine that Dr. DeLawyer was qualified to offer expert testimony. Doe also contends the magistrate court erred in admitting and using Dr. DeLawyer's psychological evaluation to find that Doe failed to address the obstacle that his domestic violence charge created in reunification with his children.

"Whether a proper foundation for evidence has been laid, including whether a witness is qualified as an expert, is a discretionary decision to be made by the trial court." *State v. Burrow*, 142 Idaho 328, 329-30, 127 P.3d 231, 232-33 (Ct. App. 2005). The admission of evidence involving specialized knowledge outside the awareness of the average juror is governed by I.R.E. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

4

Under this rule, the proponent of the testimony must lay foundational evidence showing that the individual is qualified as an expert on the topic about which he will testify. *Burrow*, 142 Idaho at 330, 127 P.3d at 233; *see also Nelsen v. Nelsen*, ___ Idaho ___, ___, 508 P.3d 301, 326 (2022) (holding it is incumbent upon expert to set forth specific facts upon which opinion is based). Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

Dr. DeLawyer testified that he was a licensed clinical psychologist, with a master's degree and Ph.D. in clinical psychology. Dr. DeLawyer stated that in his primary practice he sees adults, children, and families, mostly focusing on individual therapy with children and adults in the area of domestic and interpersonal relationships. He has completed continuing education programming in the impact of trauma on individuals, clinical treatment of anger, general parenting and parent-child interactions, domestic violence, and the effects of domestic violence on children. Dr. DeLawyer stated he had completed over 800 psychological evaluations for the Department since 2002 and had testified as an expert in Idaho courts over 100 times.

After Dr. DeLawyer testified about his education and experience, the State moved the magistrate court to allow Dr. DeLawyer to testify as an expert witness about his evaluation of Doe. Doe's attorney objected, arguing that the State had not laid a foundation as to Dr. DeLawyer's domestic violence training related to children. The magistrate court overruled the objection, finding Dr. DeLawyer "sufficiently testified as to his training and experience which allows him to testify as an expert witness in his field" and that he was "qualified as an expert to testify as to his evaluation and those matters that he has the sufficient training and experience to do so."

Dr. DeLawyer then testified that Doe exhibited numerous behavior patterns that were consistent with anti-social personality disorder. But, Dr. DeLawyer stated he could not formally diagnose Doe with that disorder because a prerequisite to a diagnosis is that the symptoms appear in the younger teenage years and Doe did not report that he exhibited the relevant behaviors at that time. Dr. DeLawyer further testified that despite the lack of a formal diagnosis, Doe exhibited some of the relevant symptoms of anti-social personality disorder--physical aggression, domestic violence, minimal empathy, and lack of remorse--for approximately ten years. Dr. DeLawyer explained that Doe's behavior impacted his ability to safely parent and Doe presented a high risk to the children because he had not adequately addressed the issues that initially brought the children into care.

On appeal, Doe does not focus on any of Dr. DeLawyer's testimony regarding the effect of domestic violence on children (as he objected to below), but instead on Dr. DeLawyer's testimony regarding Doe's behavior as evidence of anti-social personality disorder. Fatal to this argument is that Doe did not object to Dr. DeLawyer's testimony on this ground during the termination trial. Idaho's appellate courts have routinely held that a timely and specific objection is a necessary predicate to review of an alleged evidentiary error. I.R.E. 103; *see, e.g., State v. Chacon*, 168 Idaho 524, 532, 484 P.3d 208, 216 (Ct. App. 2021). Because Doe did not object to any of Dr. DeLawyer's testimony about Doe's behavioral similarities to anti-social personality disorder testimony, he has waived any claim that the testimony was erroneously admitted.

Next, we turn to Doe's assertion that the magistrate court erred in admitting and relying on Dr. DeLawyer's psychological evaluation. At the conclusion of the State's direct examination of Dr. DeLawyer, the State moved for the admission of Dr. DeLawyer's psychological evaluation of Doe. Doe objected, arguing that although there was no dispute that Dr. DeLawyer authored the evaluation, it was "full of hearsay" and there was insufficient evidence presented about what documents Dr. DeLawyer reviewed to overcome Doe's objection. The magistrate court found that Dr. DeLawyer laid sufficient foundation by outlining the procedures he used and the records he reviewed to create the psychological evaluation of Doe. Accordingly, the magistrate court overruled Doe's objection and admitted Dr. DeLawyer's evaluation.

Even if the psychological evaluation was erroneously admitted, Doe has not established error, as much of what was contained in the evaluation was also admitted through the unobjected to testimony of Dr. DeLawyer. *State v. Sandoval-Tena*, 138 Idaho 908, 912, 71 P.3d 1055, 1059 (2003) (holding erroneously admitted evidence is harmless when duplicative of admissible and admitted evidence). Doe has failed to point to any piece of information in the evaluation that the magistrate court considered when determining whether to terminate Doe's parental rights that was not also admitted through Dr. DeLawyer's testimony. As a result, the evaluation was merely cumulative of Dr. DeLawyer's testimony and, thus, Doe has not shown the admission of the evaluation affected his substantial rights.

### 2. Report of investigation and affidavit

Doe alleges the magistrate court abused its discretion in admitting a report of investigation and accompanying affidavit into evidence during the termination trial pursuant to Idaho Code § 16-2009. Where a lower court makes a ruling based on two alternative grounds and only one of those

6

grounds is challenged on appeal, the appellate court must affirm on the uncontested basis. *Rich v. State*, 159 Idaho 553, 555, 364 P.3d 254, 256 (2015).

A review of the termination trial transcript shows the magistrate court referenced two independent bases to support its decision concerning the documents at issue; first, they were admissible pursuant to I.C. § 16-2009; and, second, the court could take judicial notice of the documents. At the termination trial, Doe only challenged the admission of the documents based on hearsay, and after the magistrate court stated that it was taking judicial notice of the documents, Doe did not object. On appeal, Doe does not assert the magistrate court erred in taking judicial notice of the documents. Because Doe does not challenge the magistrate court's decision to take judicial notice of the documents, the magistrate court did not err on the uncontested basis.

### 3. Probation officer's testimony

Doe alleges the magistrate court erred at the termination trial by admitting, over Doe's hearsay objections, Doe's probation officer's testimony that Doe had a pattern of failing to attend scheduled urinalysis tests (UAs), including missing six appointments between August and September 2021.[1] Although the magistrate court found the probation officer's testimony regarding documented missed UAs was permissible under the business records exception to the hearsay prohibition, we need not address whether this exception applies because Doe himself testified that he missed the UAs. Doe testified that he stopped attending and taking UAs as required under his case plan from approximately February 2021 until July 2021. Doe testified that he relapsed on controlled substances around August 2021 and subsequently disclosed this relapse to his probation officer. Doe explained that after disclosing this relapse to his probation officer, he began engaging in random, twice-a-week UAs but he missed multiple tests. Accordingly, Doe's probation officer's testimony concerning Doe's missed UAs was duplicative of Doe's own testimony and, as discussed above, Doe has failed to demonstrate how the admission of the cumulative evidence affected a substantial right. I.R.E. 103(a); *State v. Sandoval-Tena*, 138 Idaho 908, 912, 71 P.3d 1055, 1059. As such, Doe has failed to show error.

---

[1] Doe additionally argues that the magistrate court erred in admitting Doe's probation officer's testimony concerning Doe's missed treatment classes. The probation officer testified that after Doe disclosed that he relapsed on controlled substances, treatment classes were ordered as part of Doe's felony probation. Doe's testimony supported his probation officer's statements. These treatment classes were not a part of the court-ordered case plan in Doe's child protection case, and the magistrate court did not make any findings related to Doe's missed treatment classes. Accordingly, we will not address this claim on appeal.

**B.**      **The Magistrate Court Did Not Err in Terminating Doe's Parental Rights**

Doe alleges that, without the erroneously admitted evidence, the magistrate court's findings that Doe neglected the children and that termination of his parental rights is in the best interests of the children are not supported by substantial evidence.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

**1.**      **The magistrate court's finding that Doe neglected the children is supported by substantial evidence**

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, neglect exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in

which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

Although the magistrate court acknowledged Doe demonstrated periods of compliance and completion of many of the tasks in his case plan, the court found that he "did not comply with critical components of the case plan" and, accordingly, neglected the children. Specifically, the magistrate court found Doe was not consistent with visitation, never graduated beyond supervised visitation, failed to submit to drug tests during significant periods of time, and failed to maintain sobriety; thus, Doe did not overcome the major barriers to his reunification with the children. These findings are supported by substantial evidence.

The magistrate court found that Doe failed to comply with his case plan task requiring him to participate in visitation with the children. This case plan task states:

> [Doe] will participate in visitation with his children so that the parent-child bond is maintained. The Department will provide an appropriate visitation schedule for the family. Visits will begin as supervised and as the parent progresses and is appropriate, the visit supervision will reduce to monitored and then to unsupervised, leading to an eventual extended home visit.

Doe attended thirty-seven visits during the entirety of the case. The case manager testified there are four stages to visitation, beginning with the most restrictive (supervised at the Department) and gradually becoming less restrictive until the children have unsupervised, overnight visits with the parent(s). The case manager testified that when she took over the Does' case assignment a year into the proceedings, Doe's visitation was still only weekly and supervised at the Department, which was unusual so far into a child protection case. She explained that Doe never progressed from unsupervised visits because of overriding safety concerns with on-going substance abuse and domestic violence and the need to more thoroughly assess reports that indicated Doe had threatened to kill the children. Additionally, the case manager testified that Doe's visitation with the children was suspended multiple times; twice because Doe missed visitation appointments and once because of a court order. Further, as Doe did not timely complete his psychological evaluation, the case manager testified that the Department did not know how to proceed with safe visits after Doe's alleged threat against the children. The children's foster father testified that the children were devastated when Doe missed scheduled visits. Doe's visitation supervisor testified that Doe's visitations were suspended twice due to missing multiple visitation appointments.

9

Doe testified that his visitation was suspended early in the case which resulted in no visits with his children from January to August 2020. Doe testified that once visitations were reinstated, he participated in visitation with the children for seven months, from August 2020 to March 2021. However, Doe explained that around March or April 2021, his visitations were suspended because he missed three visits and these missed appointments were his fault. Although Doe testified that he initially asked for the visitations to be reinstated, he then waited two months before asking again and admitted that he did not have a good reason to explain this delay. Doe testified that his visitations were reinstated in July 2021 and he consistently attended the visitations from July or August 2021.

Thus, there was substantial evidence that Doe's behavior resulted in multiple suspensions of his visitations over the course of the child protection case, he did not timely pursue reinstatement of visitations after suspension, and he never progressed beyond the most restrictive stage of visitation due to concerns about his ability to safely parent the children in an unsupervised setting. Accordingly, there was substantial evidence that Doe did not comply with the case plan task related to visitation.

Next, the magistrate court found that Doe failed to comply with the case plan task requiring him to submit to drug testing. This case plan task required Doe to:

> submit to random UA's either through a substance abuse treatment agency or through a Department contracted agency and will maintain sobriety. The Department will monitor the results of the UA's to determine progress in the client providing negative results. [Doe] will begin these UA's immediately.

First, the case manager testified that Doe did not complete this case plan task. She explained that although Doe initially consistently tested negative, in mid-February 2021, Doe stopped attending his scheduled UAs. The case manager testified that failure to appear for testing appointments are considered positive test results, she had trouble communicating with Doe during this time, and these circumstances gave her great concern that Doe potentially relapsed. Further, the case manager stated Doe's attorney advised that Doe desired to switch testing locations in April 2021 and accordingly submitted a referral, but Doe did not show up for scheduled UAs at the new location.

Second, as discussed above, Doe testified that he did not consistently attend his required UAs. Doe's reason for not attending his scheduled tests was because he felt "really frustrated. I didn't know what to do. I, you know, felt hopeless, and, you know, I just didn't know what to do.

I felt very frustrated. So I kind of had just not--kind of given up." While Doe testified he started attending his scheduled UAs as part of his felony probation in August 2021, he also acknowledged that he missed testing appointments since that time.

Third, the magistrate court ordered a hair-follicle test based on concerns about Doe's ongoing substance abuse. Doe testified the magistrate court ordered a hair-follicle test in April 2021, but he did not take the test until October 2021, right before the termination trial. Doe explained that he initially did not take steps to comply with the court's hair-follicle testing order, then came down with COVID, and then, after he recovered, he missed the referral. The case manager testified that hair-follicle tests are an important tool to assist individuals in their treatment plans and assess the safety of re-unification and without the hair-follicle test, she had no ability to utilize the information it would have provided.[2] Accordingly, there was substantial evidence that Doe did not comply with the case plan task requiring him to submit to drug testing. As such, substantial evidence supports the magistrate court's finding that Doe neglected the children by failing to comply with his case plan tasks.[3]

2.      **The magistrate court's finding that termination of Doe's parental rights is in the best interests of the children is supported by substantial evidence**

Doe asserts without the erroneously admitted evidence, the magistrate court's finding that termination of Doe's parental rights is in the best interests of the children is not supported by substantial evidence. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the

_____

[2]      Doe alleges the magistrate court erred in finding neglect based on Doe's failure to comply with the court's orders regarding the protection order and hair-follicle test. Doe argues these orders are not the kind of orders contemplated by Idaho Code § 16-2002(3)(b). We do not read the magistrate court's findings as holding the failure to comply with the court orders were an independent basis for finding neglect, but rather, as further evidence of Doe's failure to complete the case plan.

[3]      Because substantial evidence supports the magistrate court's findings that Doe failed to comply with the case plan tasks concerning visitation and drug testing, we need not address Doe's compliance with any other case plan tasks.

child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012). Evidence presented at the termination trial supports the magistrate court's finding that termination of Doe's parental rights is in the best interests of the children because Doe did not address the primary safety issues of substance abuse and domestic violence which brought his children into the Department's care, there was significant risk to Doe's ability to safely parent, Doe continued to engage in criminal activity throughout the proceedings, and the children had improved after being removed from Doe's care.

The evidence presented at the termination trial shows Doe has not addressed his substance abuse issues and the children remain at risk of being exposed to Doe's drug use. Dr. DeLawyer testified that Doe disclosed he was aware of Mother's methamphetamine use throughout her pregnancy with J.M., but he did not try to stop it and did not believe that Mother's use of methamphetamine negatively impacted the child. Further, Dr. DeLawyer testified that even with a period of sobriety, Doe resumed using methamphetamine during the child protection case, and Doe told Dr. DeLawyer that Doe did not believe his personal drug use impacted either his children or his ability to parent. Doe testified that he was using drugs while Mother was pregnant with J.M and knew Mother was using drugs but did not do anything to stop her use. Further, Doe testified he used drugs while at home where the children lived and relapsed in June or July 2021, which was approximately four months before the termination trial.

Additionally, the evidence presented at the termination trial shows Doe has not addressed his domestic violence issues and remains a high risk to reoffend and expose his children to domestic violence in the future. The facilitator for the domestic violence intervention class which Doe attended during the child protection proceeding expressed some reservations about whether Doe learned from his participation in the course. Although she testified that Doe complied with everything during the course, she thought Doe appeared "somewhat guarded" and, while in most cases she could tell if participants were being sincere, open, and honest, she was not able to make this determination with Doe. Further, the facilitator stated she never really felt that Doe gave her

a complete answer, did not see Doe express much empathy or personal responsibility, and while she believed Doe had "some self-awareness," she was "not sure how far that went." Doe testified that he had completed three domestic violence classes after being charged on three separate occasions with domestic violence but, despite the classes, he received criminal charges of domestic violence "due to [his] own actions."

Dr. DeLawyer expressed concerns about Doe's ability to safely parent after conducting Doe's psychological evaluation. Dr. DeLawyer testified that Doe exhibited physical aggression towards others, domestic violence, minimal empathy, and lack of remorse for his actions, which were patterns that spanned ten years and three separate relationships. These behaviors raised concerns about Doe's ability to execute basic, safe parenting skills and, as such, Dr. DeLawyer testified that he felt Doe's parenting capacity was "extremely limited." Dr. DeLawyer further explained that he "was very concerned that many or most of the risk factors that brought [Doe's] children into care had, had not been adequately reduced" and Doe's children were at risk of future exposure to domestic violence in the home if they were reunified with Doe.

Further, the evidence presented at the termination trial indicates Doe continued to engage in criminal activity throughout the case proceedings. Doe testified that during the child protection case he had obtained three criminal charges arising from separate incidents. Specifically, Doe stated that in March 2020, he was charged with domestic violence against Mother and pled guilty to a reduced charge of disturbing the peace. Next, Doe testified that in February 2021, he was charged with malicious injury to property after breaking a car window while somebody was in the car; the charge was later dismissed after Doe agreed to pay restitution. Finally, Doe testified that he pled guilty to felony possession of a controlled substance in February 2021 (stemming from an arrest in March 2020) and he was currently on probation for the offense.

The children's foster father, who is also the children's maternal grandfather, testified that the children had concerning behavior and developmental delays when they came into care. He explained K.M. was "feral" when he first came into care; he was "wild," "bowlegged," and "unaccustomed to even stepping on grass." Further, the foster father testified that initially K.M. was very emotional and demonstrated concerning tantrums. The foster father stated that J.M. was in the foster parents' care for almost the entirety of his life; was developmentally late on everything, including turning over, crawling, and walking; was under intensive speech and physical therapy, including orthotics to prevent toe walking; had hearing, vision, and organ

13

deficiency tests; and is on the waitlist for pediatric neurology and autism screening. The foster father testified that the children collectively had behavioral issues when they first came into care and it was initially "miserable" to take the children in public.

However, the foster father testified that the children have subsequently shown meaningful improvements after being removed from Doe's care and are well-bonded with their foster parents. Specifically, the foster father testified that L.M. now has a "very normal, vibrant life" that includes gymnastics, music, and swim lessons and that she knows her letters and numbers and is ready for kindergarten. The foster father testified that since coming into care, K.M. engaged in physical and speech therapy and "made quite a transformation." The foster father explained K.M. now participates in gymnastics, can swim, knows his letters and numbers, is well spoken, and no longer has tantrums, but instead discusses his feelings with his foster parents. The foster father testified that he and the foster mother devote an increased amount of attention to J.M. and provide him with all the medical appointments and referrals that are needed for his development. Finally, the foster father testified that when they now take the children into public places, people compliment them on how well behaved the children are. Ultimately, the foster father expressed that the whole family has become extremely bonded and they wish to be, and have been identified as, the children's pre-adoptive placement.

Similarly, the case manager testified that termination of Doe's parental rights would provide the children with needed stability and would be in their best interests. The case manager explained that the children were placed with the foster parents for all but a few days of the case and became well-adjusted to the household where they are provided discipline, moral guidance, and necessary educational, medical, and psychological care. She further stated the foster family is a relative and sibling placement and the Department has no intention of selecting anyone other than the foster parents as the children's pre-adoptive placement. Finally the case manager testified that while Doe loves his children, it is in the best interests of the children for Doe's parental rights to be terminated:

> As with every case I've ever worked, the, the parents' love, and care, and concern for the children is not in question in any way. Both of these parents love their children deeply, and wish at their core to be able to reunify. However, for two years now, a little over two years now, neither parent has been able to demonstrate that they can remain sober from, from illegal substances.
>
> [Doe] did, did demonstrate sobriety for a significant period of time. If I recall correctly it was from approximately June to February--June of 2020 to

14

February of 2021. And so it was, it was hopeful during that time. But since then has admitted to, to relapsing on multiple occasions. And so that, that safety threat is still very much at play.

And in addition, I think perhaps the root and perhaps the overarching concern is the concern for domestic violence. The concern for a long patterned history of, of violence against others, reported by a myriad of sources. And I think specifically enhancing this concern is the fact that [Doe] has completed three rounds of domestic violence treatment and continues to be assessed to be at a high risk of re-offending.

That is of great concern. That directly relates to the safety and best interest of the children. And it's not in their best interest to remain in foster care for another year or two to see if more intensive services could potentially have a different outcome.

The case manager ultimately concluded that there was not a safe environment for the children to return to if reunited with Doe.

Accordingly, the evidence presented at the termination trial was that Doe had not adequately addressed his substance abuse and risk of domestic violence, the primary reasons the children came into care, and he continued to perpetrate criminal activity during the child protection case. Further, testimony established that the children presented with developmental delays and behavioral issues when they came into care, but after receiving the treatment and support they needed, they made significant behavioral, medical, and psychological improvements, and that termination would provide them with needed stability and security. Therefore, even without the alleged erroneously admitted evidence, substantial evidence supports the magistrate court's finding that termination of Doe's parental rights is in the best interests of the children.

## IV.

## CONCLUSION

Doe does not show that any of the alleged evidentiary errors impacted a substantial right. Further, even without the evidence Doe alleges was erroneously admitted, the magistrate court's findings that Doe neglected the children and termination is in the best interests of the children are supported by substantial evidence. Accordingly, the magistrate court did not err and the judgment terminating Doe's parental rights is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.